IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Transstar Electric, Inc.,                                Case No. 3:13CV1837

        Plaintiff

        v.                                             **ORDER**

The Charter Oak Fire Insurance Co.,

        Defendant

      In this insurance dispute arising under Ohio law, an insurance company has refused to pay its insured's claim for losses allegedly caused by employee theft.

      Plaintiff Transtar Electric submitted a claim to its insurer, defendant Charter Oak Fire Insurance Company, after discovering that an employee had stolen roughly $120,000 from Eagle Creek Builders, a company that Transtar's owner, Dan Bollin, also owned and operated. Charter Oak denied the claim because Eagle Creek, not Transtar, sustained the loss.

      Pending is Charter Oak's motion for summary judgment. (Doc. 27). For the following reasons, I grant the motion.

### Background

      Bollin is the President and sole owner of two separate Ohio companies: Transtar, an electrical contractor, and Eagle Creek Builders, a real-estate developer. As a matter of administrative convenience, Bollin operated both companies from a single location. Employees of both Eagle Creek and Transtar received paychecks drawn on Transtar's account, though Eagle used its own funds to reimburse Transtar for all wages paid to Eagle Creek employees.

Despite this operational overlap, each company maintained its own bank account, books and records, and insurance policy.

Transtar's controller, Kerry Katafiaz, testified Transtar exercised no control over Eagle Creek's business accounts. Although Katafiaz claimed that Bollin had authority over Eagle Creek's accounts, she later acknowledged this authority stemmed from Bollin's role "as president of Eagle Creek." (Doc. 27-2 at 18). Transtar's complaint alleged that Eagle Creek entrusted certain of its accounts to Transtar, but Katafiaz admitted there was no basis for this allegation.

In 2004, Transtar hired Michele English as a bookkeeper. After her hiring, English started keeping Eagle Creek's books, and she spent the majority of her working time until 2008 working for Eagle Creek. From 2008 until 2012, in contrast, English worked for Transtar four days per week and Eagle Creek one day per week.

In 2012, Bollin discovered that English had stolen nearly $120,000 from Eagle Creek's accounts. She accomplished the theft by forging checks, making unauthorized withdrawals, and using the company's credit card for personal purchases. Bollin filed a crime report with the Toledo Police Department identifying Eagle Creek as the "victim" of the theft. (Doc. 27-8 at 2).

Bollin and Katafiaz testified English did not take any money belonging to Transtar.

After discovering the theft, Bollin – acting on Eagle Creek's behalf – submitted a claim under Eagle Creek's insurance policy with Frankenmuth Insurance. Frankenmuth paid Eagle Creek $5,000, the maximum available under the policy.

Apparently unsatisfied with that recovery, Bollin – now acting on Transtar's behalf – submitted a claim under Transtar's insurance policy with Charter Oak.

The policy, which identified only Transtar as the "insured," contains a "Commercial Crime Coverage Part" defining when Charter Oak would compensate Transtar for losses caused by employee malfeasance. As relevant here, the policy stated:

> Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we", "us" and "our" refer to the Company providing the insurance.
>
> \* \* \*
>
> **A.  Insuring Agreements**
>
> Coverage is provided under the following Insuring Agreements for which a Limit of Insurance is shown in the Declarations.
>
> **1.  Employee Theft**
>
> We will pay for loss of or damage to "money" "securities" and "other property" resulting directly from "theft" committed by an "employee", whether identified or not, acting alone or in collusion with other persons.

(Doc. 27-7 at 108).

The policy defined a "theft" as "the unlawful taking of money, securities, or other property to the deprivation of the insured." (Doc. 27-7 at 117) (internal quotation marks omitted). The policy also excluded "Indirect loss[es]" caused by employee misconduct, including "damages of any type for which you are legally liable[.]" (*Id.* at 100).

Charter Oak denied Transtar's claim on grounds that the loss was not a "direct loss" to Transtar. (Doc. 27 at 9).

Transtar then filed suit for breach of contract in the Lucas County Common Pleas Court, and Charter Oak removed the case here on the basis of diversity jurisdiction. After I denied Charter Oak's motion to dismiss under Fed. R. Civ. P. 12(b)(6), *Transtar Elec., Inc., v. The Charter Oak*

3

*Fire Ins. Co.*, 2014 WL 252023 (N.D. Ohio), the case is before me on Charter Oak's motion for summary judgment.

Charter Oak contends no reasonable jury could find it liable to pay Transtar's claim because: 1) English did not steal from Transtar, but rather from Eagle Creek; 2) the policy covers thefts by Transtar employees, but English was working in her capacity as an Eagle Creek employee when she committed the theft; and 3) at best, any loss Transtar suffered was an indirect loss that the policy specifically excludes from coverage.

### Analysis

Summary judgment is appropriate under Fed. R. Civ. P. 56 where the opposing party fails to show the existence of an essential element for which that party bears the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The movant must initially show the absence of a genuine issue of material fact. *Id.* at 323.

Once the movant meets that initial burden, the "burden shifts to the nonmoving party [to] set forth specific facts showing there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 250 (1986). Rule 56 "requires the nonmoving party to go beyond the [unverified] pleadings" and submit admissible evidence supporting its position. *Celotex*, *supra*, 477 U.S. at 324.

I accept the non-movant's evidence as true and construe all evidence in its favor. *Eastman Kodak Co. v. Image Tech. Servs., Inc*., 504 U.S. 451, 456 (1992).

### A. Whether a Theft Occurred

To recover under its policy with Charter Oak, Transtar needs to show it sustained a "loss of or damage to money . . . [or] other property resulting directly from theft committed by an employee." (Doc. 27-7 at 108) (internal quotation marks omitted).

Importantly, the policy defines theft with reference to the policy's named insured. Thus, for purposes of the policy, a "theft" is "the unlawful taking of money, securities, or other property *to the deprivation of the insured*." (*Id.* at 117) (emphasis added; internal quotation marks omitted).

But here, Transtar has introduced no evidence English's defalcation was "to the deprivation of the insured" – i.e., Transtar. To the contrary, the undisputed evidence shows English's misconduct was to the deprivation of Eagle Creek.

Despite their common owner and shared physical location, Eagle Creek and Transtar are distinct legal entities, *see RCO Int'l Corp. v. Clevenger*, 180 Ohio App. 3d 211, 213 (2008), that maintained their own accounts, books and records, and insurance policies. Moreover, Bollin and Katafiaz testified the stolen funds belonged entirely to Eagle Creek, not Transtar. And contrary to the allegations in Transtar's complaint, there is no evidence Transtar controlled Eagle Creek's accounts, such that English's theft was, in effect, a theft of Transtar's funds.

Transtar appears to contend English's defalcation was to its deprivation because it is obligated to reimburse Eagle Creek for its loss.

This assertion, even if true, would be unavailing, as it shows only that Transtar sustained an indirect loss – i.e., "[p]ayment of damages of any type for which you are legally liable" (Doc. 27-7 at 100) – that the policy excludes from coverage.

In any event, there is no evidence that Transtar had such a duty: neither Katafiaz or Bollin could point to any contractual or other legal obligation imposing a duty to indemnify Eagle Creek.

5

Nor is there any evidence Eagle Creek demanded indemnification from Transtar, an event reasonably likely to occur had such a duty existed.[1]

Finally, there is no contention – let alone evidence – Bollin ignored corporate forms in running his businesses. *Cf. Glidden Co. v. Lumbermens Mut. Cas. Co.*, 112 Ohio St. 3d 470, 476-77 (2006). Rather, Bollin took advantage of the chance to structure his business operations separately, and he has benefitted, presumably, from having enjoyed the protections arising under Ohio's corporate law. Now he wants to ignore the separate corporate forms and claim that Eagle Creek's monies were, in fact, Transtar's.

But there is no evidence on which a reasonable jury could find that English's theft of Transtar's monies was to "the deprivation of [Transtar]." Charter Oak is therefore entitled to summary judgment.

### B. Whether Transtar Sustained a Direct Loss

Summary judgment is also warranted because no reasonable jury could find Transtar sustained a direct loss. As explained immediately above, the only entity that sustained a loss here was Eagle Creek. And even if there were some evidence of Transtar sustaining a loss, that loss would be indirect – i.e., the supposed obligation to indemnify Eagle Creek – and not covered by Charter Oak's policy.

Given these rulings, I need not address Charter Oak's further contention that English was an Eagle Creek employee when the thefts occurred.

### Conclusion

---

[1] Indeed, Transtar's opposition papers admit Bollin has no plans to seek indemnification because that "would essentially amount to Mr. Bollin suing himself because, ultimately, any recovery would come out of his own pocket." (Doc. 31 at 10).

It is, therefore, ORDERED THAT Charter Oak's motion for summary judgment (Doc. 27) be, and the same hereby is granted.

So ordered.

/s/ James G. Carr
Sr. U.S. District Judge